# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

C. ALAN POWELL, ET AL.,     :
                                    :

       Plaintiffs,          :

                                     :

v.                            :       CIVIL ACTION NO.
                                     :       1:04-CV-1100-RWS

JACQUELINE H. BARRETT,     :

                                     :

       Defendant.        :

                                     :

## <u>ORDER</u>

This case comes before the Court on Defendant's Motion for Summary Judgment [269], Plaintiffs' Motion to Motion to [<u>sic</u>] Exclude Purported Expert Opinion Evidence of Mr. Lane [314], and Defendant's Motion for Oral Argument [316]. After reviewing the Record, the Court enters the following Order.

As a preliminary matter, the Court finds that oral argument will not aid the Court in resolving Defendant's Motion for Summary Judgment. Accordingly, the Court hereby **DENIES** Defendant's Motion for Oral Argument [316].

**Background**

Plaintiffs, certain former detainees at the Fulton County Jail (the "Jail"),

initiated this putative class action on April 21, 2004, raising claims against

Defendant Jacqueline Barrett in her individual capacity arising out of alleged

strip searches and over-detentions to which Plaintiffs were subjected between

December of 2003 and May of 2004, during which time Defendant was Sheriff

of the Jail.  With respect to the strip search claims, the named Plaintiffs could

be classified into three separate groups: first, the Arrestee Strip Search Class

("AR Class"), which consisted of inmates who were strip searched as part of the

point-of-entry booking process before being placed, for the first time, into the

general Jail population; second the Alpha Strip Search Class ("AL Class"),

which consisted of inmates who were granted bond or ordered to be released at

their first appearances, but subjected to another strip search and placed back

into the general population prior to actual release; and, finally, the Court Return

Class ("CR Class"), which consisted of inmates who went to court for hearings

and were ordered to be released, but who were subjected to another strip search

and placed back into the general population prior to being released.  (Order,

Dkt. No. [290] at 2, 9, 13.)

AO 72A
(Rev.8/82)

In an en banc decision, the Eleventh Circuit Court of Appeals held that the strip searches of the AR Class did not violate those Plaintiffs' constitutional rights. Powell v. Barrett, 541 F.3d 1298, 1302 (11th Cir. 2008). The court then remanded the case back to this Court to apply the principles discussed in the opinion to the claims of the AL and CR classes. Powell v. Barrett, 307 F. App'x 434, 436 (11th Cir. 2009). On remand, the Court held, by Order dated March 3, 2011, that under the principles articulated by the Eleventh Circuit, the strip searches of the AL and CR classes did not violate those Plaintiffs' constitutional rights; accordingly, the Court granted Defendant's Motion for Summary Judgment [269] on grounds of qualified immunity as to the remaining strip search claims. (Order, Dkt. No. [290] at 13, 16.)

In the same Order, however, the Court denied without prejudice Defendant's Motion for Summary Judgment [269] on grounds of qualified immunity as to Plaintiffs' over-detention claims, granting instead Plaintiffs' Rule 56(d) Motion [282] for further discovery. (Id. at 8-9.) Specifically, the Court granted Plaintiffs' request for additional discovery to demonstrate a "history of widespread abuse" of inmates' constitutional rights at the Jail (i.e., a history of over-detentions), which the Court found was necessary to enable Plaintiffs to rebut the defense of qualified immunity. (Id. at 7-8.)

AO 72A
(Rev.8/82)

By Order dated August 8, 2011, however, the Court vacated its March 3, 2011 Order [290] to the extent it granted Plaintiffs' Rule 56(d) Motion.  (Dkt. No. [300] at 6.)  The Court found that contrary to the findings of its initial Order, additional discovery was not needed to demonstrate a problem with over-detentions at the Jail given that Defendant admitted that such a problem existed.  (Id. at 2-3.)  In light of this admission, Defendant argued that her qualified immunity defense would revolve around the issue of whether she was deliberately indifferent to the problem.  (Id. at 5-6.)  Finding that Plaintiffs had had a sufficient opportunity to discover information related to this issue, the Court reconsidered and denied Plaintiffs' Rule 56(d) Motion for further discovery.  (Id.)

In light of this ruling, the Court ordered Plaintiffs to respond to Defendant's Motion for Summary Judgment [269] on the over-detention claims–the only claims that currently remain in this case.  (Id. at 6.)  This motion has now been fully briefed and is ripe for decision.

## Discussion

I. **Defendant's Motion for Summary Judgment [269]**

A. Legal Standard

Federal Rule of Civil Procedure 56 requires that summary judgment be

4

granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "The moving party bears 'the initial responsibility of informing the . . . court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'" Hickson Corp. v. N. Crossarm Co., 357 F.3d 1256, 1259 (11th Cir. 2004) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal quotations omitted)). Where the moving party makes such a showing, the burden shifts to the non-movant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact does exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).

The applicable substantive law identifies which facts are material. Id. at 248. A fact is not material if a dispute over that fact will not affect the outcome of the suit under the governing law. Id. An issue is genuine when the evidence is such that a reasonable jury could return a verdict for the non-moving party. Id. at 249-50.

In resolving a motion for summary judgment, the court must view all evidence and draw all reasonable inferences in the light most favorable to the

non-moving party.  Patton v. Triad Guar. Ins. Corp., 277 F.3d 1294, 1296 (11th

Cir. 2002).  But, the court is bound only to draw those inferences which are

reasonable.  "Where the record taken as a whole could not lead a rational trier

of fact to find for the non-moving party, there is no genuine issue for trial."

Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997) (quoting

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

"If the evidence is merely colorable, or is not significantly probative, summary

judgment may be granted."  Anderson, 477 U.S. at 249-50 (internal citations

omitted); see also Matsushita, 475 U.S. at 586 (once the moving party has met

its burden under Rule 56(a), the nonmoving party "must do more than simply

show there is some metaphysical doubt as to the material facts").

> B.     Qualified Immunity

As stated above, Defendant moves for summary judgment on Plaintiffs'

over-detention claims on grounds of qualified immunity.  The doctrine of

qualified immunity protects government officials performing discretionary

functions from being sued in their individual capacities.  Wilson v. Layne, 526

U.S. 603, 609 (1999).  Officials are shielded "insofar as their conduct does not

violate clearly established statutory or constitutional rights of which a

reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800,

AO 72A
(Rev.8/82)

818 (1982). The qualified immunity analysis thus is governed by a two-step framework. One inquiry in the analysis is "whether the plaintiff's allegations, if true, establish a constitutional violation." Barnett v. City of Florence, 409 F. App'x 266, 270 (11th Cir. 2010) (citing Hope v. Pelzer, 536 U.S. 730, 736 (2002)). "If the facts, construed . . . in the light most favorable to the plaintiff, show that a constitutional right has been violated, another inquiry is whether the right violated was 'clearly established.'" Id. (citing Saucier v. Katz, 533 U.S. 194, 201 (2001)). "Both elements of this test must be present for an official to lose qualified immunity, and this two-pronged analysis may be done in whatever order is deemed most appropriate for the case." Id. (citing Pearson v. Callahan, 555 U.S. 223, 241 (2009)). Finally, the qualified immunity analysis "is a pure question of law" at the summary judgment stage once the court has "drawn all inferences in favor of the nonmoving party to the extent supportable by the record." Scott v. Harris, 550 U.S. 372, 381 n.8 (2007).

The Court first undertakes the inquiry of whether Plaintiffs have shown a constitutional violation on the part of Defendant. If the Court finds a sufficient showing of a constitutional violation, it then must consider whether the violation was of a clearly established right. If, however, no violation has been established, the inquiry ends and the Court must find Defendant entitled to

7

qualified immunity.  Under the Fourteenth Amendment Due Process Clause, a detainee has a "constitutional right to be free from continued detention after it was or should have been known that [he] was entitled to release." Cannon v. Macon Cnty., 1 F.3d 1558, 1563 (11th Cir. 1993).  To establish a violation of this right, "Plaintiffs must show that Defendant[ ] acted with deliberate indifference to Plaintiffs' due process rights." West v. Tillman, 496 F.3d 1321, 1327 (11th Cir. 2007).

In this case, Plaintiffs seek to hold Defendant liable in her supervisory capacity for the alleged over-detentions that occurred at the Jail.  In this regard, "'[i]t is well established in this Circuit that supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability.'" Id. at 1328 (citing Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003)).  On the contrary, "supervisory liability occurs either when the supervisor personally participates in the alleged unconstitutional conduct or when there is a causal connection between the actions of a supervising official and the alleged constitutional violation." Cottone, 326 F.3d at 1360.  The requisite causal connection can be established by showing, among other things, "a history of widespread abuse [which] puts the responsible supervisor on notice of the need to correct the alleged

AO 72A
(Rev.8/82)

deprivation, and he fails to do so." Id.  The Eleventh Circuit Court of Appeals

has held that the standard for supervisory liability is "extremely rigorous." Id.

at 1360.

Plaintiffs seek to establish deliberate indifference on the part of

Defendant to Plaintiffs' constitutional rights by showing that Defendant was on

notice of the over-detentions and yet failed to take action to stop them.

Specifically, Plaintiffs allege that Defendant "engaged in a pattern of continued

inaction in the face of employees' documented widespread abuse of [Plaintiffs'

constitutional rights] by failing to ensure their release on their Release Dates."

(Am. Compl., Dkt. No. [78] ¶ 517.)  In support of her Motion for Summary

Judgment, Defendant does not deny the problem of over-detentions; on the

contrary, she admits that such a problem existed but argues that she "vigorously

addressed [it] with a wide variety of actions" and thus was "anything but

deliberately indifferent" to it.  (Def.'s Mot. for Summ. J., Dkt. No [269] at 19-

20.)

The parties agree that one of the causes of the over-detentions was a

shortage of Jail staff during the relevant time period combined with a sharp

increase in the average daily population at the Jail. (Def.'s Statement of

Undisputed Material Facts ("Def.'s SOF"), Dkt. No. [269-2] ¶ 37.)   In 2003,

the City of Atlanta decided to send all Atlanta Police Department arrestees charged with state offenses to the Jail rather than city detention facilities, which resulted in a twenty-nine percent increase in the average daily Jail population. (Id. ¶¶ 32-33.)  Approximately fifty to sixty new inmates were received at the Jail each day, with even higher numbers on Friday and Saturday.  (Id. ¶ 35.)  Despite this influx of inmates, the number of Jail staff did not increase, causing the Jail to experience significant staff shortages.  (Id. ¶¶ 34. 36.)

In addition to staff shortages and an increasing Jail population, Defendant cites other reasons for the over-detentions.  Defendant contends that unavoidable delays in obtaining paperwork from the courts further delayed the release of inmates, as did the fact that court documents were not in a standard format and were often difficult for Jail staff to read and understand.  (Id. ¶¶ 38, 41-44.)  Finally, Defendant contends that Jail staff had to consult different computer systems for the sheriff, courts, and district attorney before an inmate could be cleared for release, which further contributed to the delays.  (Id. ¶ 39.)  While Plaintiffs generally "deny" that these additional factors contributed to delay, they put forward no evidence to refute them.  (Pls.' Combined Opp. to Def.'s SOF and Pls.' Statement of Facts ("Pls.' SOF"), Dkt. No. [307-1] ¶¶ 38, 39, 41-44.)

10

In support of her argument that she was not deliberately indifferent to the problem of over-detentions, Defendant alleges that she took the following actions: "(1) request[ed] funding for additional staff; (2) [took] steps to increase the efficiency of existing staff; (3) work[ed] to improve the transfer of information from the courts to the Jail, so that releases could be processed more efficiently; and (4) hir[ed] a new Chief Jailor to study and improve Jail processes, particularly including the release process." (Def.'s Mot. for Summ. J., Dkt. No. [269-1] at 20.) With specific regard to staff shortages and staff efficiency, Defendant did the following: First, she attempted to reduce staff shortages by suggesting to the County that certain Jail staff positions be made civilian rather than sworn, so that Defendant could hire more employees for less money. (Barrett Dep., Dkt. No. [269-6] at 99-100.) Additionally, Defendant reassigned staff from other parts of the Jail or from outside the building to help with the book-out process. (See id. at 99, lines 11-19 ("[During] peak periods I reassigned staff from inside of the building or even outside the building to come in and to help with the book-out process. There was a point at which I required all of the senior staff, I don't care what bureau they worked in, courts, warrant, all of us worked at the jail for at least a shift so that we could give some relief to others inside the building so that we could redirect staff perhaps down to the

11

book-out process.").) At one point, Defendant also required Jail staff to log on a board the names of inmates who were waiting to be released with the goal of clearing those names off the board. (Id. at 100, lines 9-13.)

Defendant also obtained a new filing system for the Jail records room in an effort to speed up the book-out process. (Id. at 111-12, lines 25-3.) (The Court notes, however, that this "new filing system" appears to refer only to filing cabinets, which Defendant provided to take the place of milk crates.) With regard to communicating with the courts, Defendant met with the Chief Judge of the Superior Court and members of the District Attorney's office to make sure that the Jail received records from the courts as expeditiously as possible. (Id. at 104, lines 15-18.) She also sent a memo to the Fulton County judges asking them to send orders regarding case dispositions to one central fax number. (Id. at 134, lines 19-25.) In addition, when the funds were available to pay employees overtime, Defendant authorized a staff member to be a liaison with the Court to ensure that Court documents issued late in the day were sent to the Jail. (Id. at 139-140, lines 13-5.)

Finally, in September of 2003, Defendant hired Roland Lane, Jr. to serve as Chief Jailor. (Decl. of Roland Lane, Dkt. No. [269-7] ¶ 2.) Defendant tasked him with improving jail processes in Fulton County, generally, and

charged him with "making the intake and release processes more efficient and effective using available staff." (Id. ¶ 6.) Lane made it a priority as Chief Jailor to speed up the release process through an initiative he termed "Operation Bum's Rush." (Id. ¶ 7.)

To refute a claim of deliberate indifference, a supervisory official must show that she "did not fail to act correctively to address the problem." West, 496 F.3d at 1330. Thus, the Eleventh Circuit has held that a sheriff was not deliberately indifferent to the problem of under-staffing at the jail, which led to significant over-detentions, where the sheriff took the following actions: "asked existing staff to work overtime," "temporarily brought in employees from other departments," and "hired new employees . . . ." Id. In this case, Plaintiffs argue that the aforementioned measures Defendant took were insufficient to address the problem of over-detentions and at times led to perverse results (i.e., longer delays). (See generally Pls.' Opp'n, Dkt. No. [307].) However, the question the Court must answer is not whether Defendant approached the problem in the best way or achieved the best results, but whether she was "deliberately indifferent"–that is, whether she failed to take corrective action. As stated above, this is an "extremely rigorous" standard to meet. "Human error does not equal deliberate indifference." West, 496 F.3d at 1327. Deliberate indifference

13

clearly contemplate culpable conduct greater than negligence.  <u>Id.</u>  In spite of

the evidence of negligence on the part of Defendant, under the rationale of

<u>West</u>, the Court cannot conclude, based on the conduct set forth above, that

Defendant acted with deliberate indifference to the problem of over-detentions

at the Jail.  Accordingly, the Court finds that Plaintiffs have failed to satisfy the

standard for supervisory liability.

Having found no constitutional violation on the part of Defendant, the

Court need not undertake the second prong of the qualified immunity analysis.

(<u>See, e.g.</u>, <u>Cottone</u>, 326 F.3d at 1362 ("Because [Plaintiffs have not established]

a constitutional violation committed by the supervisory defendant[], we need

not reach the 'clearly established law' prong of the qualified immunity inquiry

with respect to supervisory liability. . . .).)  The Court concludes that Defendant

is entitled to qualified immunity on Plaintiffs' over-detention claims and hereby

GRANTS Defendant's Motion for Summary Judgment [269].

**II.**     **Plaintiffs' Motion to Exclude [314]**

In light of the Court's ruling in Part I, <u>supra</u>, granting Defendant's

Motion for Summary Judgment [269] as to the only claims remaining in this

AO 72A
(Rev.8/82)

action, Plaintiff's Motion to Exclude Purported Expert Opinion of Mr. Lane [314] is hereby **DENIED as moot**.[1]

**Conclusion**

In accordance with the foregoing, the Court hereby **GRANTS** Defendant's Motion for Summary Judgment [269] as to Plaintiff's over-detention claims, **DENIES as moot** Plaintiff's Motion to Exclude Purported Expert Opinion of Mr. Lane [314], and **DENIES** Defendant's Motion for Oral Argument [316]. As no claims remain, the Court **DIRECTS** the Clerk to enter final judgment in favor of Defendant.

**SO ORDERED**, this _17th_ day of February, 2012.

_Richard W. Story_
RICHARD W. STORY
UNITED STATES DISTRICT JUDGE

---

[1] The Court notes that in reaching its decision to grant Defendant's Motion for Summary Judgment, it did not rely on the statements made in the Lane Declaration or Deposition that Plaintiffs challenge in this Motion.

AO 72A
(Rev.8/82)